McIlvaine, J.
The only questions in this case arise upon the rejection, by the court below, of certain testimony offered by the plaintiff.
I. Did the rejected testimony tend to prove an agreement in writing and signed by the defendant, within the meaning of the fifth section of the statute of frauds aud perjuries.
The statute provides that no action shall be brought *458 whereby to charge the defendant upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized. The only writing relied upon to take this case out of the operation of the statute, was a copy of the minute and resolution of the board of directors of the defendant, signed by H. B. Perkins, secretary pro term., at the meeting of the board, when the minute and resolution were made. The resolution was adopted; as appears from the minute of the meeting, upon consideration of a proposition from Kimball, Himrod, Kelly, and others, relating to the subject matter of the alleged contract; and it fully embodied the terms and conditions upon which the defendant was willing to contract with the parties therein named. It also, in terms, authorized the superintendent of the defendant to enter into a contract with the parties named, agreeing, on the part of the company, to the terms and upon the conditions therein specified. This resolution, together with the minute of the board, was copied and signed by the secretary of the meeting and placed in the hands of the superintendent, who delivered the same to Kimball, Himrod, Kelly, and their associates. No doubt, the primary object in placing this instrument in the hands of the superintendent was to show his authority for entering into the proposed contract; but inasmuch as the instrument contained all the terms of the contract he was authorized to make, as well as the names of the parties with whom it was to be made, and contained no instructions as to the mode in which the business was to be transacted, or as to the manner or form in which the evidence of the contract was to be preserved, a majority of the court are of opinion that he was fully authorized to deliver the instrument itself to the parties therein named as and for the proposal of his principal for their acceptance; and when the parties to whom delivered assent to and accept the terms therein proposed, *459 the contract is complete, and the instrument thus delivered becomes the primary evidence as against the proponent of the terms of the contract so made.
A written proposal, containing the names of the contracting parties and all the terms of the proposed agreement, signed by the proponent or by some other person thereunto by him lawfully authorized, when accepted and assented to by the party to whom the same is made, is sufficient to take an action against the proponent, founded thereon, out of the operation of the statute of frauds. And the delivery of such instrument as a proposal, and the acceptance thereof, and assent thereto by the party to whom it is made, may be proved by parol testimony. Chase v. Lowell, 7 Gray, 33; Tuft v. Mining Co., 14 Allen, 407; Ives v. Hazard, 4 R. I. 14; Sanborn v. Flagler, 9 Allen, 470; Reuss v. Picksley, 1 Ex. 342 ; Thayer v. Luce et al., 22 Ohio St. 62.
II. Did the ruling of the court in rejecting the testimony offered tend to the prejudice of the plaintiff?
It is claimed by the defendant, that, had the testimony been received, the judgment ought nevertheless to have been rendered against the plaintiff, because it is said the alleged agreement was void for want of consideration, and that it was also void for want of mutuality of obligation ; and it is also claimed that the alleged contract was personal to Kimball and associates, and no rights thereunder could be transferred to the plaintiff.
1. The consideration for the defendant’s promises was the building of a lurnace by Kimball and associates on the line of defendant’s road, which we think was sufficient to support the contract. True, at the time it was made, the promise of the defendant was conditional, and may be regarded in the nature of a continuing offer; but when Kim-ball and his associates had performed all the conditions on their part to be performed, and the consideration was thus fully executed, the promise of the defendant became absolute ; and although, by the terms of the contract, the defendant could not be put in default until a request to perform had been made, still the right to make the request *460 and insist npon performance had been secured to Kimball and associates. It matters not, in our jndgment, whether Kimball and associates were or were not bound to defendant to erect a furnace according to the condition of the agreement; for having done so at the request of defendant, and relying on the faith of its promise, they have a right to insist npon performance on its part. Nor does it matter whether Kimball and associates were bound to deliver freight to the defendant, as they have executed the consideration for defendant’s promise to carry freights for them at a given rate for a specified time when requested.
2. Did the plaintiff acquire any right or interest by the assignment of the contract to it by Kimball and his associates ?
The court is of opinion that the rights of Kimball and associates, under this contract, were transferable by assignment, and that the plaintiff1, as assignee, succeeded, in equity, to all the rights secured by the terms of the contract to its assignors; and also, that it may sue in its own name for any refusal of the defendant to transport ore or metal to or from the furnace erected in pursuance of the agreement, and of which it is the owner. The freights to be carried for the period and at the rates named were limited,'by express terms, to ore and metal to and from such furnaces as might be erected under the agreement. But we are unable to find any intention to restrict the enjoyment of the right to such freights to Kimball, Himrod, Kelly, and their associates personally, or to them only for such time, within the period of ten years, as they might continue to be the owners and operators of the furnace. Erom its nature, as well as from the terms of the agreement, the right secured was capable of profitable exercise by them after they ceased to be such owners and operators; and this being so, we can see no reason for holding (in the absence of express prohibition) that such valuable interest in a contract is not capable of being transferred generally. But in this case the transfer wrns made to their successor in the ownership of the furnace: and not only so, but the *461 transfer itself was more formal and technical than real. The assignee, though a body corporate, was composed solely of Kimball, Himrod, Kelly, and their original associates, and was formed by them for the mere convenience of carrying on the business of the furnace, and in a large sense it held all its property (including the furnace as well as the contract for transporting freight to and from it) in trust for the use and benefit of the natural persons of whom it was composed. All these facts the rejected testimony tended to prove, as well as the further fact that the defendant, for several years, with full knowledge of all the facts, recognized and dealt with the plaintiff as the successor of Kimball and associates, and entitled to all the benefits of said contract.
We think, therefore, that the court below erred, to the prejudice of the plaintiff, in rejecting the testimony.
III. When an exception is taken to the ruling of a court in injecting testimony offered by the party excepting, it is not necessary that the bill of exceptions should set out the testimony offered and rejected; it is sufficient, in such case, to state the facts which such testimony tended to prove. The judgment of the Common Pleas must be reversed and the cause remanded.
Welch, C. J., and Day and West, JJ., concurred.
White, J. I am unable to concur in this decision. I do not dispute the proposition that an offer, or proposal, in writing, signed by the party to be charged, or his authorized agent, and accepted by parol by the party to whom it is made, is a sufficient memorandum, or note, of an agreement to satisfy section 5 of the statute of frauds. But the terms of such writing must show that it is intended as an offer which the party to whom it is addressed is authorized to accept. If it is not in legal effect an offer or proposal of the pai’ty making it, no act of any other party can make it such.
The resolution in the present case shows, in my opinion, *462 that it was not intended as an offer or proposal to he presented to Kimball and his associates for their acceptance* It was intended only as authority to the superintendent to enter into a contract with them if he saw fit. The authority, it is true, was limited and defined, but he was not bound, at all events, to enter into the contract, although the other parties might be willing to do so. The authority of an agent does not cease to be such, and become something else, because it is special and limited.
But it is said the superintendent did make such contract with the parties by delivering to them the resolution as an offer or proposal of the defendant for their acceptance.
I admit the delivery of an offer in writing may be proved by parol, but I deny that a writing, which is not by its terms an offer from the party to be charged, can be changed into one by parol evidence, and thus be made to perform an office, for which, as shown by its terms, it was not designed, without violating the statute.
The attestation of Perkins, the secretary pro tem., was only designed to authenticate' the writing as a resolution of the board. A true copy of the resolution would have had the same effect against the defendant without such act of authentication. The attestation of the secretary did not change its legal character.
By the terms of the resolution, which constitutes the only writing on which it is sought to charge the defendant, the assent of the superintendent, the only agent of the defendant authorized to make the contract, was indispensable to accomplish that purpose. There is no evidence in writing that he did so assent, and • his parol assent can not, in my judgment, be proved under the statute.